Good morning, Your Honors. I'm Hal Thurston. I appear on behalf of the appellant, Thomas Fischer, the insured in this matter. This is an insurance coverage matter. Oh, I'm sorry. I would like to reserve five minutes. This is an insurance coverage matter that must lie on some of the most unusual, bizarre set of facts that most of us have been trying, cases for a long time could envision. And we're familiar with the facts because we're still puzzling over them. You are familiar with the facts, Your Honor. It appears, however, that State Farm chooses to disregard the facts because State Farm, throughout their pleadings, has continually taken the position that there is no basis of liability on Mr. Fischer's part other than the simple sexual act itself. And that's simply not what the facts have established here. They further go on to say that there's no basis, no evidence to support a claim that the liability of Mr. Fischer is based on the mistaken identity by Ms. McKenzie and the subsequent ineffective consent. In point of fact, the trial judge very clearly said that there was evidence to the effect that Ms. McKenzie had originally given consent under her own mistaken understanding that it was somebody else who was literally in bed with her, that it was her boyfriend, instead of the man with whom she'd had this flirtatious relationship for several weeks earlier, the man to whom she had said earlier in the evening, yes, you can come by, I may not be there, but you can come by. Not the man with whom she had danced, hugged, shared wine. So let me – I mean, I have to admit I was even more puzzled after reading the Washington Court of – State Court of Appeals reconciliation of the verdict. But as I understand it, it stands that there's no forced act on his part, correct? Correct, Your Honor. And the jury verdict itself had three very specific questions which the jury answered that I think are – are controlling here. Number one, did Tom Fischer have sexual intercourse with Donna McKenzie without her consent? It had to be worded in the double negative because that was the language of the Alaska statute that was applicable. And the jury said no, he did not have sexual intercourse without her consent, essentially a finding of consent. And the Court of Appeals has said that that was a finding of consent as well. The jury went on to say that he did not have intercourse with her when he knew that she was incapacitated, incapable, or unaware. And it finally went on to say that his conduct, whatever it was, was not outrageous or extreme. Now, from those findings, Your Honor, we can infer, we have to infer, that Tom Fischer received consent, he had reason to believe that he received consent, and he did not know that whatever the consent was, that it was given improperly or under mistaken facts. So supposedly, as I come out with the Washington State Court of Appeals, is that his problem was that he was negligent in not precisely identifying the consent to him as opposed to some other person. Is that? That's it, Your Honor. And so that's what he's sued on. That is the basis of the liability. That's the basis on which he's paid her money to satisfy this judgment. It's not because he sexually assaulted her. It's not because he had consensual sexual relations with her. The Court of Appeals has very specifically told us in this case what the duty was, what the breach was, and what the damage was. And they say, and I quote, "...Fischer's duty was to affirmatively secure effective consent before engaging in sexual intercourse with Mackenzie. Thus, our assumed set of facts, he would be negligent if he did not first verify that her consent was effective and directed to him. He breached his duty, and the resulting harm, here's the damage, sex with someone with whom Mackenzie did not effectively consent to have sex would have been a direct result of that breach." Now, that's important, because if we look at State Farm's obligation under the policy, we see that it says that if a claim is made or a suit is brought against an insured because bodily injury, property damage caused by an occurrence, an accident, then we will pay up to our limits of liability for the damages for which the insured is legally liable. The Court of Appeals has told us that Tom Fischer is legally liable because he did not assure that the consent actually given was directed to him properly. And the damages for which he is legally liable are damages because Donna Mackenzie had sex with somebody other than with whom she thought she was having it, not because they had consensual sexual relations. There are no damages for sexual relations that are consensual, of course, and it's only if we jump to the other side. And I think one of the problems, frankly, is what the Washington State Court of Appeals did, because the other way you could look at it was if she gave consent but it was not to him, then it wasn't consensual vis-a-vis him. She gave consent but it wasn't to him, then it's not consensual vis-a-vis him. It's back to – although that, of course, collides with the jury verdict. But I'm just saying that's where – so one other way to look at it would be, well, what the Washington Court of Appeals was saying was that the reason he might have to pay some money is because the consent wasn't directed to him. But they didn't say that he didn't have consent to have relations with her. Because they answer that question as was it without consent, and they say no. That's right. No, it was with consent. It was with consent. And if you look at what Tom Fisher has said throughout this case, including the what happened statement that he drafted within a week or two of the incident, and which was given to State Farm at the time of the first tender, what they got from the police reports and the medical reports, is really quite consistent with that. Because he describes this protracted, flirtatious relationship that they have for a couple of weeks. He actually stops by her house in the morning one day. He's in bed with her. They go off and they go snow skiing. And he comes that night. They engage in sexual relations, twice as a matter of fact. And then suddenly something happens, and she stops. He speculates because she saw a yellow van owned by her boyfriend outside. We don't know that. But what we do know is that he has said from the beginning that she suddenly stopped, and she started asking unusual questions. Why are you here? Not something you normally ask somebody with whom you're having sex. Why are you here? Where did you park? And then she said, you've lost. That is perfectly consistent with a concept of withdrawn consent or the light bulb going on in her mind. Oh, my. What have I done here? See, we don't have, of course, the trial transcript. But let me just ask you, because this potentially would be part of this record, and I'm not saying we would or wouldn't take judicial notice, but without giving the details, is there testimony in the trial transcript that she thought he was the boyfriend? There is testimony from Ms. McKenzie that she was initially of the belief that it was her boyfriend. Okay. And Judge Murrah specifically pointed that out in denying the motion to set aside the verdict. And that is the basis upon which the court of appeals could justify and reconcile this finding of consent on one hand and negligence on the other. State Farm can't really argue with that. That's the position we find ourselves, whether we talk about law of the case or judicial estoppel or an estoppel on the part of the insurer that chooses not to become involved, to leave its insured to its own merits. They cannot now come in and say, well, if the case had been tried differently, it would have been sorted out, we would have known this fact or that fact. We all have to deal with the facts that the court of appeals and the trial court have left us. And those, if that's not an unforeseen or unexpected result following the original intentional act of having sexual intercourse, it is just, it's almost impossible for me to anticipate what would be. It really is very, very little different from the cases from out of jurisdiction involving the negligent transmission of disease through sexual intercourse. There was consent, but of course the consent was with the understanding that the person was having sex with a healthy person. And if the defendant insured negligently, not intentionally, not knowingly, but if he negligently infected his partner, not knowing that he had disease or not knowing that he was infectious, then that's an accident under the insurance policies and there is coverage. It's the same concept as is discussed in the restatement that I quote in my reply brief in which the court, I'm sorry, the restatement talks about the, of course I can't find the page when I want to, but in my brief, the restatement of torts talks about ineffective consent in a sexual relationship because of the negligent passing of a disease through the act. And it is the same concept as the trespass cases that I've cited that say that if there is consent given and there's no reason that the insured should know right then and there that it's bad consent if he truly has it, and if he trespasses, whether it's by walking or cutting trees or dumping garbage, what have you, if he trespasses, then although he intended to do it, it is an accident because he intended to do that which with consent does not cause damage. And that sets us apart from the cases, the self-defense cases, the cases in which the insured might say, oh, I thought you gave me consent, or I thought that the man was armed, so I acted in self-defense, because in those cases, what he's doing, when he shoots the person who he thinks is aiming a gun at him, he is doing something which undoubtedly is going to cause injury. But here, Tom Fisher was not doing anything which undoubtedly would cause injury when he engaged in sex with Donna McKenzie with her consent. Your Honor, I want to touch briefly on the question of duty to defend. It has not been much of an issue here, but I need to touch on it briefly. It's important to remember that this case, this defense, was tendered to State Farm on multiple occasions, in 1998 when the claim was initially made by McKenzie's lawyers, again in 1999 when the suit was filed, again in 2002 after the jury verdict and Judge Mura's statements came down, and then again in 2005. And every single time, State Farm has said there is no coverage, we're not going to defend, and the reason we're not going to defend and that there is no coverage is that under no stretch of the imagination can any kind of consensual sex ever be considered an accident. Pointedly, they never said what is now being raised for the first time in their brief, they never said, oh, there's no bodily injury here. It was not an issue. It was not briefed to the district court. The district court judges aside was not the basis upon which he denied coverage here, and it is not the basis upon which this Court should properly decide this case either. But with multiple tenders, then we can look at each time what facts were known at the time of the tender. Even as early as the first tender, State Farm knew not only the allegations of sexual assault, they also knew the allegations of negligence, and they had Mr. Fisher's statement about the facts which would fit with the withdrawn consent or revoked consent or mistaken consent that was eventually found to exist, and they had the medical records from the basic rape exam that is done any time there is a claim of rape, and they had the police records, the investigation which revealed that no charges were filed. With all of this together, they had a duty to investigate further and give their insured the benefit of the doubt. If they didn't think that there was coverage, then the proper way to handle it in that situation where there is this ambiguity is extend coverage or, I'm sorry, extend the defense, reserve coverage. Bring their own declaratory judgment action. They chose not to. I think, Your Honor, the amica case that I cited in my reply is interesting in that case, or in that respect, because that does include claims of sexual assault that were denied, and the jury on the underlying claims, like here, found that there was no sexual assault, but did find that there was a negligence basis. In that case, it was negligent infliction of emotional distress. And the court there said it would be an odd result, indeed, for this court to conclude that the factual allegations of the complaint could not support a claim for negligent infliction of emotional distress when the trial court allowed that claim to go to the jury and when the jury found that the evidence supported such a claim. Amica had a duty to defend Benjamin until it could establish that those claims were not supported by the facts. That's what we have here, and that's what State Farm chose not to do. Your Honor, I'd like to reserve the rest of my time. Kagan. Morning. I'm Colleen Barrett, and I'm on behalf of State Farm Fire and Casualty Company. And I guess the first thing I'd like to say is the more that I look at this, the simpler it gets. Sex is not an accident. It's that simple. Neither is driving down the street. Pardon? Driving down the street isn't an accident either, and yet your company insures against all sorts of things that go wrong when somebody drives down the street. It's an accident when there's a collision between two vehicles. But the driving down the street was intentional. The sex was intentional. But was what happened according to the court intentional? Did Mr. Fisher intend to have sex with someone who had not given him effective consent? He intended to have sex with someone, and that's the crucial question. See, I think it overly simplifies it. Somebody intends to drive down the street, too. They don't intend to have a collision, but they intend to drive down the street. The courts all across the country that have looked at coverage for cases involving sexual contact where there's an allegation of an assault or even when the allegation and the other side says it was consensual, there is not coverage because it's not an occurrence and it's not – it's a deliberate act. Sex can't happen by accident. Neither can an auto accident. Pardon? Neither can an auto accident. Somebody got into a car and decided to drive down the street. I really think your analogy fails if you say once you get into bed with somebody, anything that happens after that is intentional. I think once you get into bed with someone, an insurance company does not insure what  Well, then once I climb into my car – But that's not true. I mean, we have all these cases – I mean, this is, to me, much more akin to the AIDS and herpes and those kind of cases, and it does boil down to how you define the event. But here, if the question – it was the scope of the disclosure and the consent that permitted coverage in those cases, and I would be interested to hear your comments as to why you think those cases aren't the most analogous to this situation. I don't believe they're the most analogous because the causes of action there were the transmission of the disease. If you take sex out of the equation, the claim is you transmitted the disease to me in a negligent manner. And the issues that are analyzed by the courts is whether or not the individual was aware that they had the disease, was aware that it could be transmitted, and the intent had to do with that knowledge of the condition that they had and its transmissibility. Not – I don't even know if that's a word. And – sorry. But it is not a situation analogous to this because the cause of action here is for damage resulting from the sexual intercourse. It is not damage that is aside from that. It's not something else. In all of those cases, it's the disease transmission that's the cause of action. It's not a cause of action for sexual assault. And it's not a defense that the sex was consensual. In all those cases, there's no question that the sex itself was consensual. The only question is was there either an intentional transmission of the disease or not. And that's why those cases are different. There's no case anywhere that's been cited to you where there was a claim of sexual assault, and the damages are claimed to have arisen out of a sexual assault. The affirmative defense is consent. Well, but that isn't the case either because the jury said no to sexual assault, so that's not what he was found liable for. And I think that Mr. Thurston was correct when he argued to the judge and to the court of appeals that the jury's verdict was inconsistent. Well, yeah, he might have been correct, and here's what would have happened. Then they would throw out the jury verdict. Okay, but they didn't. So then you say, well, wow, this is a bizarre case, and maybe in State Farm's case it would be another one quite like this. But they didn't throw it out, so now we're stuck with what the Washington court of appeals said. And if you go back to Washington law, it says it's an unintended, unexpected event. That's an accident, okay? Well, just like the guy in that case where he dives off the bridge over, I think it's like the Evergreen Point Bridge, he intended to dive off of it. He didn't necessarily expect or intend that when he dove off of it he was going to run into those kind of consequences. Well, that's the situation with Mr. Fisher, isn't it? He dove off the bridge. It is, I guess the case that you're talking about involves a determination of whether a death is accidental or a suicide. I think that it's not the same. They do it by defining what's an accident. They do it by defining what's an accident, and what's an accident is unexpected, unintended, and there's no the State of Washington also specifically states that engaging in a sexual act is a deliberate act. It is not an accident. So it specifically says, I think it's the Heckler case that specifically states that sexual activity is not an accident. That case from Washington State states that. And further, Washington law also states that the further unexpected act that might take it outside of the initial unexpected act, the something else that has to happen, which has been argued here, the something else is the potential possible misunderstanding or mistaken identity, that that has to be something that both the means and the result are unexpected and unintended. In this case, there's no way that you can argue that the means, which is the sexual act itself, was unexpected, unintended. And I think, too, by making it convoluted, it gets away from what basically happened here, which is a question of whether or not there was consent, whether it was effective or ineffective consent. That's the question. And that was the defense. And the defense. Kagan. Well, did she? Here's the question the jury answered. Did he engage in sexual contact with Plaintiff Donna McKenzie without her consent? Right. And the answer is no. And I think that goes to his liability. So right there, to the extent that the engaging in sex without consent can never be an accident, the jury drew the line. So then you have to say, well, but he's still being held liable for something. So apparently what he's being held liable for is his negligence in verifying what she means by consent, because we already said the jury already answered the question about the sex with him, whether it was without her consent. And they said no, it was with her consent. That's what the jury said. And then we're stuck with the Washington Court of Appeals. So the only thing left, because he's still holding the bag on this jury verdict, has to be that he stupidly didn't give her a lie detector test. You know, am I the boyfriend, am I the next-door neighbor, or am I the guy from the Skagway bar? I think that the other part of that jury verdict, which, again, doesn't make a great deal of sense, is that the question that was asked at the end was, did Donna McKenzie file a false police report? She filed a police report of rape. And they said no, she didn't file a false police report. So, I mean, I hate to say it, but what appears that the jury actually did was say she asked for it. She flirted with him. She teased him. She made him believe that she'd be interested. And when he showed up? Well, they could have, at the time, they found out with, you know, maybe her consent was withdrawn. And at that point, she says, well, you know, this is not where I want to be at this point in the evening, and you're not the person who ought to be in my bed. And on reflection, this whole thing wasn't what I thought. And if she had conjured up some feasible thing that gets her beyond the falsity in terms of the police report, which is pretty broad, it seems to me that doesn't undo his claim. I mean, the problem that I think we're having, you're having, is the jury verdict, you know, maybe without trying to second-guess the Supreme Court of Washington State Court of Appeals. There certainly was a substantial basis for throwing it out. But they didn't. And so now we're stuck with it. I think we are. But I think we do have, this court does have a record of what the testimony actually was. And the Court of Appeals did not have that. The Court of Appeals did not have any trial record. Yeah, but we can't. See, that's why we have this all the time in habeas cases, where we can't look behind then what the State Court of Appeals or State Supreme Court did. And those are civil cases. And we look to the court of last determination in the State, and then we have to take it at face value. We don't go beyond or into the transcript of that. But I guess what the Court of Appeals did was not make a finding fact. The Court of Appeals said it's possible. The Court of Appeals did not make a finding. What, at this stage, we're looking at is their coverage for what actually happened. But the only way they could uphold the verdict, the only way, would be for that to have been the determination by the jury. Because otherwise, there's, quote, possibility there was this narrow area. And if they hadn't gone there, then they would have had to overturn the verdict. They could have come up again with other possibilities. But I guess taking it as that's what happened, let's take it as that's what happened, is that there was a mistake about consent. I go to the California cases which were cited, the Mendez case and the Kwan case, and those cases are actually the analogous cases to this one. It's not some other claim other than sexual assault with a defense of consent. It's this set of facts. And in those cases, the court, the courts in California found no coverage. And they said that the question of whether or not it's an accident and whether or not there's a deliberate act, it goes to the nature of the conduct and not the state of mind. So we're talking about Mr. Fisher's conduct, and there's no question that he intended to engage in sex with Ms. McKenzie. That's not a question. The question, then, is it's not, it's necessarily not accidental because any harm, not because harm was intended, but simply because the conduct could not be engaged in by accident. So whether or not Mr. Fisher's state of mind would have been different had he known that Ms. McKenzie thought he was someone else, it doesn't matter. We go and focus on what his conduct was. But his conduct encountered unexpected, unanticipated consequences, namely that while he thought he had consent, it turned out he didn't have consent. So the intentional conduct turned out to be based on a mistake that resulted in an accident. The mistake is not an accident. No, not the mistake, but the consequence of it, an unanticipated consequence. I would, again, point to the Kwan case, which takes that head on and says, I'm citing it on page 23 of my brief, it says, Assuming as the insureds insist that liability could be imposed without a finding of any intent to harm, the lack of such intent would not convert volitional physical acts into accidents within the meaning of that term in the policy under California law. In other words, injurious physical conduct may have been a mistake, but it was no accident. A mistake over consent doesn't mean it's not an accident. What is non-accidental about failing to get consent? That's still the case. The jury found that he had consent, but it turned out then that the consent was ineffective. That's how it turned out. So it was a consequence, subsequent event after the intentional act commits. So that's what makes the case different. I don't think that it's different from the California case, because I think that the fact that he had consent or didn't have consent or effective consent or ineffective consent, it goes back to what did he do, and is an insurance policy, as a matter of public policy, supposed to cover a person's engaging in a sexual encounter with someone and what they do in terms of obtaining consent, not obtaining consent, making sure it's effective consent or not? Is that what your homeowner's policy is supposed to cover? Well, I certainly agree with you with regard to sexual assault, and that's what the claim appeared to be. But we got a bizarre hybrid result, which I think is sort of unfathomable under the law, but here it is, and I don't think we've got the power to say anything different. And I look at the conduct for which Mr. Fisher is held liable, and I have to say that I can by no way figure out how he intended that result, because the jury said he got consent and he did what you would have expected somebody in his position to do if they were going to be doing that activity in the first place. It sure seemed like an accident in terms of something other than what was intended. Well, again, I think that when you're talking about a sexual encounter, he intended to have a sexual encounter. And when there are unintended consequences... Well, then I go back to my driving, because you intend to drive and then you have unexpected consequences which are covered. He intended to have sex with her. He did not intend to have sex against her will. He thought he had obtained consent. The jury said he's not guilty of sexual assault, but the jury also said he was negligent somehow, just as a driver's negligent. I mean, I don't think he could be said to have anticipated how this played out. I don't think any lawyer could be said to have anticipated how this played out. I think the result is just flat-out bizarre. But it played out that way. And looking backwards at it, why isn't that unexpected? Because, again, the state of mind of Mr. Fisher is not what we look at. We look at did he intend to have the sexual contact, because the sexual contact is the basis of the claim. No. Sexual contact without apparent effective consent is the basis of the claim. I mean, this plaintiff did not collect $100,000 or found injured for $100,000 for the fact of having sex by itself. There was nothing else that there was to be the basis of the claim. Oh, I would beg to differ. I mean, the whole point of this is that she had sex with a person other than the one that she meant to. I mean, if her thought was I thought it was my boyfriend, well, she's having sex with somebody. She's not getting $100,000 worth of injury because she's having sex. It's got to be that extra piece that it's not her boyfriend, that it's not the person she thought she gave consent to. Her boyfriend's not going to have to pay her $100,000 if it turned out to be him. Right. Again, her testimony specifically was she was asked what happened. She said, I'm fighting to wake up. I'm having a suffocating feeling of someone on top of me. I can't place everything. I feel my leg being wrenched, and I feel myself being penetrated with pain. What are you thinking? This is the only testimony. I'm trying desperately to come to, I'm thinking, Scott, is that you? And, yes, Donna, it has to be Scott. Who else would you be here with? And I can't place it. I'm fighting to come more and more awake, and in my own pain, and in my own noises that are actually waking me up and bringing me to a conscious state. And what do you see? I see this man on top of me. Let me ask you, if it's Scott, if it is Scott, do you think she gets a penny? If it is Scott? If it's her boyfriend, does she get a penny from anybody? And I think the answer has to be no. The reason she gets $100,000, the reason that there's found to be an injury is not because she's engaged in sexual intercourse, but because she's engaged in sexual intercourse with the wrong guy. If she believes, I guess I disagree. If it happened like she said, yes, Scott could be liable. She did not consent to sex with anybody. She was asleep. That's her version of what happened. She was asleep and she woke up in pain. That's her version. But the jury found her 40% negligent, so we know they didn't sign on to that one. We don't know what they did because it's such a bizarre verdict. They know they knew that she had been flirting with this man for a long time, and it appears to me that's what they found her responsible for. But, again, that's all, it's all speculation. It was speculation by the, anybody involved, including the court of appeals. And I guess what we're with here is, is this Court going to change what's going on in the entire country and find that a claim for sexual assault with a defense of consent is a covered claim under a homeowner's insurance policy? And it's never been and it shouldn't be. Let me ask you about that. Isn't it possible that as framed at the outset, it might not have been a covered claim? And the duty to defend didn't even come into play until we had the lay of the land and the landscape a little differently. And then at that point, the claim is really not what they thought, but it's not X, it's Y. And now there is a duty to defend, and it becomes a covered claim. Is that possible? I don't see how, again, the duty to defend would be over. The case is over. There's no more defense. So I don't know that that would be. I guess it's more of a case. Well, no, in the middle of the case, this happens, like at the conclusion of, or somewhere in there. Again, I think we go back to the case law, and it's pretty clear that sexual contact as the basis of a claim is not a covered claim. And so I don't believe that there was any point in this case when things changed and coverage would attach. Thank you. We have some rebuttal time. Thank you. Your Honor, the Hecker case that was just referenced as being allegedly Washington State's statement that sexual cases are never going to qualify as an accident was a case in which there was a specific finding of lack of consent, forced anal intercourse. Completely different from the facts here. I would submit to the Court that there is no case, certainly no case that has been referenced by either of the parties in this litigation, no case I know of in this country that says that merely because sexual activities are involved, there can be no accident. But that is State Farm's position. Merely because the injuries result at some level following sexual activities, that there can be no accident. The Mendez and Kwan cases were referenced, and I would refer to the Mendez case, which in part uses the exact analogy that Judge Hooker does, the driving analogy. And they say that if you're driving, your intent is to drive. Your intent may even be to speed. But your intent and the intentional act, that is, is not driving into another car. You may be doing all those things intentionally which end up causing an accident. But unless you truly are driving into that other car intentionally, then it is an accident. But Mendez says an accident, and I quote now, And that, I think, is exactly what we've got here. That is exactly what the court of appeals has said. I agree this is a bizarre set of facts. I had a hard time many times throughout this case trying to figure out where I am, what the lay of the ground, where I'm going with this case and how I'm defending  this case. This is where we are. Frankly, I've never taken a deposition at 10 p.m. in a brothel museum atop the Red Onion Saloon, which is a historic national landmark in Skagway. But it is what we have here. The Kwan case, which is also referenced, I think is very clearly distinguishable because there, at the time that it was pled, the insured – these are the facts known to the insurance company. The insured had pled no contest to a charge of sexual battery for the abuse of a minor. We've got a minor child, so we've got issues of whether even consent could come about. And arbitration had found that the minor had consented to some foreplay, but specifically found that she had not consented to the intercourse. So a completely different set of facts. The California cases, which may or may not be good law in California. There's a question they are in conflict with California Supreme Court cases, as has been noted. That those California cases agree with the basic Washington principle, which is that an intentional act can result in an accident if there is some break in the natural consequence line. If there is some unexpected, fortuitous, unusual result that was not predictable from that basic – the basic intentional act itself. I think ultimately the problem we're all having with this case, especially State Farm has had with this case, is that it does deal with sex. And it brings up notions of criminal conduct, puritan interests, what have you. But the reaction from the get-go in this case was sex, consensual or not, can't ever be an accident. They've never gone back and studied that. Whereas, in fact, we buy insurance to protect us. Well, that does raise a question, which is that if insurance coverage results because it's not theoretically impossible to have the conclusion reached by the court of appeals here. But, in fact, I'd have to say every other case that I've been able to find, and almost every other case you'd anticipate, this kind of allegation links up to either it was a sexual assault or it wasn't. You rarely have the hybrid that we have here where you've got part cow and part monkey. So, well, as a policy matter, do we want to say because occasionally you flip a coin and it lands on its side that the insurance company has to anticipate in every case where there's an alleged sexual assault, the coin could land on its side and, as a result, there's going to be a duty to defend? I have to say I've got some sympathy for the insurance carrier trying to deal with you get the kind of result you get here, which, to be candid with you, I think you should have won in the court of appeals, but you didn't. So you're in this court of appeals instead. But we can't go back and redo that. So what is the insurance company supposed to do? Several comments, Your Honor. Number one, they can do exactly what a couple of cases talked about in here. They can expressly write into their policy that sexual activities, any damages resulting from sexual conduct is excluded. Very easy. They can protect themselves. They chose not to put that in there. They choose not even to define accident. I think they're asking for trouble when they do that. Secondly, Your Honor, although they could protect themselves into the future, in point of fact, Washington courts, and I think realistically that's why we're in federal court, that's why we got removed here, Washington courts have historically and repeatedly said if there's a tie, the insured is the winner. We are going to find coverage. We're going to find duty to defend if there is some equivocation between them. That's the policy of the Washington State Supreme Court that has been enunciated. And finally, Your Honor, I don't think that it is accurate to say that none of the other cases involving sexual conduct, that there's nothing other than either there's consent or there's abuse, because, as was pointed out, we have this litany of cases involving transmission. We have this sort of consequence, this unexpected, unrelated consequence of the sexual act. Those clearly have been covered, and that is exactly what this jury and the court of appeals said we have here. Thank you. I want to thank both counsel for your arguments. It's an unusual case. Fisher v. State Farm is submitted.
judges: McKeown, Clifton, Schwarzer